UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **John Lenzen,** | Civil No. 09-CV-2893 (SRN/AJB) |
| **Plaintiff,** | MEMORANDUM AND ORDER |
| v. | |
| **Garon Products, Inc.,** | |
| **Defendant and Third-Party Plaintiff,** | |
| v. | |
| **Suttle Apparatus Corp., and**<br>**Hexion Specialty Chemicals, Inc.,** | |
| **Third-Party Defendants**. | |

L. Michael Hall, Hall Law, P.A., 1010 St. Germain Street West, Suite 100, St. Cloud, Minnesota 56301, and Peter G. Van Bergen and Valorie C. Rosha, Cousineau McGuire Chartered, 1550 Utica Avenue South, Suite 600, Minneapolis, Minnesota 55416, for Plaintiff.

J. Mark Catron, Stacey H. Sorensen, and William M. Bradt, Hansen Dordell Bradt Odlaug & Bradt, PLLP, 3900 Northwoods Drive, Suite 250, St. Paul, Minnesota 55112, for Defendant and Third-Party Plaintiff Garon Products, Inc.

Brian A. Wood, Christopher L. Goodman, and Matthew S. Frantzen, Lind Jensen Sullivan & Peterson, PA, 150 South Fifth Street, Suite 1700, Minneapolis, Minnesota 55402, and Peter L. Gregory, Bassford Remele, PA, 33 South Sixth Street, Suite 3800, Minneapolis, Minnesota 55402, for Third-Party Defendant Suttle Apparatus Corp.

Brian M. McSherry, M. Ann Mullin, Michael M. Skram, Timothy J. Leer, and Mark R. Azman, Johnson & Condon, PA., 7401 Metro Boulevard, Suite 600, Minneapolis, Minnesota 55439, for Third-Party Defendant Hexion Specialty Chemicals, Inc.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on separate Motions for Summary Judgment filed by

Third-Party Defendants Suttle Apparatus Corporation and Hexion Specialty Chemicals, Inc.[1] [Doc. Nos. 49, 52]. For the reasons that follow, Hexion's Motion is denied and Suttle's Motion is granted.

## I.   BACKGROUND

On September 27, 2007, Plaintiff John Lenzen was using an extension ladder to install electrical conduit on the ceiling of the new warehouse owned by his employer, Third-Party Defendant Suttle Apparatus Corporation. Lenzen fell off the ladder and was injured. He brought this lawsuit against Defendant Garon Products, Inc., contending that a concrete coating material that Garon manufactured had been applied to the floor of Suttle's warehouse, and that this sealant was defective and caused the ladder to slip out from under him. As a result of his injuries from the fall, Plaintiff is a quadriplegic . (Pl.'s Mem. Opp'n to Hexion's Mot. Summ. J. [Doc. No. 66] at 2.)

The concrete coating material at issue is called Garonguard. There is no dispute that Garonguard was first applied to the warehouse floor several days before Lenzen's accident. Indeed, Suttle admits that it hired a group of high school students (a high school dance team, according to Hexion), to make the first application of Garonguard on September 22, 2007. Two days later, on September 24, Suttle employees applied a second coat of Garonguard. The parties vigorously dispute whether Garonguard was properly mixed before its application, whether it was properly applied, and whether other factors, such as Lenzen's alleged lack of training in the use of a ladder, caused the accident.

---

[1] Hexion was formerly known as Shell Epoxy Resins, Inc. and Resolution Performance Products.

After removing Lenzen's lawsuit to this Court, Garon filed two Third-Party Complaints, one against Suttle [Doc. No. 3] and one against Hexion Specialty Chemicals, Inc. [Doc. No. 19], the manufacturer of the concrete coating material's two components, an epoxy resin and a curing agent. (Third-Party Compl. ¶ X [Doc. No. 19].)  In its Answer to the Third-Party Complaint, Hexion filed a cross-claim against Suttle and a counterclaim against Garon. [Doc. No. 20.] Also, Lenzen filed a Rule 14(a)(3) claim against Hexion, repeating the contentions in Garon's Third-Party Complaint. [Doc. No. 23.]

Garon subsequently settled its claims with Lenzen, executing a Pierringer release.[2] [Doc. No. 78.]  Thus, the only claims left in the lawsuit are Lenzen's claims against Hexion and Hexion's cross-claim against Suttle.

**II.    DISCUSSION**

**A.    Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

---

[2] "In a Pierringer agreement, a tortfeasor settles 'for its fair share of plaintiff's award as later determined by the trier of fact.'" In re Individual 35W Bridge Litig., 787 N.W.2d 643, 654 n.10 (Minn. Ct. App. 2010) (quoting Rambaum v. Swisher, 435 N.W.2d 19, 22 (Minn. 1989)).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.      Suttle's Motion**

Suttle contends that none of the expert witnesses have opined that any negligence on the part of Suttle caused or contributed to Lenzen's accident. Suttle therefore seeks summary judgment on Hexion's cross-claim for contribution and indemnity. Hexion's cross-claim against Suttle contends that Lenzen's injuries were caused either by Lenzen's own fault or were "caused by, and the result of the conduct of Garon, Suttle, or others." (Hexion's Answer at 5, ¶ 4 [Docket. No. 26].)

There are two possible bases for Suttle's liability in this case. Suttle could be liable if it failed to properly apply Garonguard, or if it failed in its duties to Lenzen to provide proper training, equipment, or supervision. However, no expert witness opines that Suttle was in any way negligent. The expert opinions are confined to discussing whether the floor was slippery as a result of Garonguard's alleged defective properties. No expert concludes that any alleged slipperiness was due to Suttle's application of Garonguard. Whether the application of Garonguard was somehow faulty and caused an insufficient cure, which in turn caused the floor to be slippery, is not within the ordinary knowledge and experience of a layman. As such, "causation in fact cannot be determined without expert testimony." Walstad v. Univ. of Minn. Hospitals, 442 F.2d 634, 639 (8th Cir. 1971). Absent an expert witness's testimony that Suttle

was somehow negligent, there is no genuine issue of fact as to Suttle's negligence.

Nor does any expert witness opine that Suttle breached any duties toward Lenzen. Indeed, only two experts even mention the equipment Lenzen used; none mentions any training or supervision issue whatsoever. (See, e.g., Franzen Aff. [Doc. No. 55] Ex. 7 (Peterson Report) at 3 (stating that the ladder Lenzen used was "functional and not beyond its useful life"); id. Ex. 11 (Gramann Report) at 8 (noting that the ladder was "in working condition").)[3]

Hexion contends that Suttle's own expert, Dr. Raymond Foscante, provides a possible basis for Suttle's liability for failure to provide Lenzen with a safe working environment. According to Dr. Foscante, when he independently tested the cure times for Garonguard, a "diluent/plasticizer" substance migrated to the surface of the Garonguard. (Hall Aff. [Doc. No. 67] Ex M (Foscante Report) at 4.) He opined that this "diluent/plasticizer" "would cause a lubricating effect on the surface [of the floor]" and might have caused the ladder to slip. (Id.) Indeed, during his testing, he observed a "tacky residue" on the surface of the Garonguard (id. at 12), although the report does not specify how long into the cure process this tacky residue appeared and whether it subsequently disappeared. He also testified that during the first 24 hours of curing, the floor would look wet and slippery. (Skram Decl. [Doc. No. 65] Ex. A

---

[3] It is not certain that Suttle could be liable within the procedural restrictions of this case under an unsafe workplace theory, absent some evidence that Suttle caused the unsafe workplace in the first instance (by, for example, improperly applying Garonguard). In a similar factual situation, where an employee was injured by an allegedly defective product and the injury was also alleged to be caused in part by the employer's negligent supervision, the Eighth Circuit held that the manufacturer could not seek indemnification from the employer because each had violated independent duties toward the employee. Bjerk v. Univ. Eng'g Corp., 552 F.2d 1314, 1318 (8th Cir. 1977). Contribution, similarly, requires common liability. Parten v. First Nat'l Bank & Trust Co., 283 N.W. 408, 412 (Minn. 1939). Therefore, Suttle is liable to Hexion only if Suttle somehow caused Hexion's product to be defective.

(Foscante Dep.) at 170-71.) Based on Dr. Foscante's opinion, Hexion argues that there was an open and obvious danger—a slippery substance on the surface of the flooring—so that Suttle was negligent in asking Lenzen to place a ladder on the surface.

Employers in Minnesota have a duty to ensure that the workplace is safe. Yates v. Hanna Min. Co., 365 N.W.2d 783, 787 (Minn. Ct. App. 1985). However, there is no testimony in the record that Suttle caused its workplace to be unsafe at the time of the accident. Neither Lenzen nor any other employee testified that the floor of the warehouse appeared wet or slippery on the day of the accident. Dr. Foscante's theory that, at some point during the cure process, the floor might appear wet and slippery is insufficient to determine that, on the day of the accident in question, the floor appeared wet and slippery. Hexion has not established that there are issues of fact as to whether Suttle's warehouse was a safe place for Lenzen to work.

There is no genuine issue of material fact as to Suttle's liability. Suttle's Motion is therefore granted.

**C.      Hexion's Motion**

Lenzen's Rule 14(a) Complaint, which adopts Garon's Third-Party Complaint, raises the following claims against Hexion: (1) Lenzen's injuries were caused by the "defective and/or unsafe condition" of Hexion's materials (3d-Party Compl. ¶ XV [Docket No. 19]); (2) Hexion failed to warn of the slip hazard (id. ¶ XVI); (3) Hexion was negligent (id. ¶ XIV); and (4) Hexion breached its warranties (id.). Hexion ostensibly seeks summary judgment on all claims, but does not mention the negligence claim in its briefing.

       **1.      Defective/Unsafe Condition**

Where there is conflicting evidence as to whether a product is defective, the issue is for

the jury to resolve and is not appropriate for resolution on summary judgment.  See Peterson v. Little-Giant Glencoe Portable Elevator Div. of Dynamics Corp. of Am., 366 N.W.2d 111, 116 (Minn. 1985) (noting that because there was the conflicting evidence on whether a design was defective, "the issue was properly for the jury").  Hexion contends that there is no evidence in the record to support any claim of defect against Hexion, making summary judgment proper.

Both Garon and Lenzen contend that Hexion gave Garon the formula for Garonguard.  The evidence for this is the testimony of a Garon employee, John Crowley, who claimed that a Hexion employee named Sam Sumner suggested that Garon use Hexion's epoxy and cure agent in a specific ratio in response to Garon's request for a solvent-free cement sealer.

Hexion argues that Garon and Lenzen cannot rely on this evidence to oppose Hexion's Motion because Crowley's testimony about what Sumner told him is hearsay.  But it cannot be disputed that, at the time he allegedly spoke to Crowley, Sumner was employed by Hexion and was speaking to Crowley in his capacity as a Hexion employee.  Thus, this testimony clearly falls within an exception to hearsay: "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D).  Hexion contends that Garon's and Lenzen's failure to inquire as to the scope of Sumner's authority or his role with Hexion prevents Garon and Lenzen from claiming Sumner's statements as admissions of a party-opponent under Rule 801, but it appears that Sumner was a "servant" within the meaning of the Rule, and that he was a salesperson responsible for dealing with Garon.  At the very least, there is a question as to whether Crowley's testimony regarding what Sumner told him fits within this exception to the hearsay rules, and for the purposes of opposing Hexion's Motion, Garon and Lenzen are entitled

to rely on this testimony.

If the jury finds that Garonguard is Hexion's formula and that Garonguard was somehow defective, then Hexion could be liable for that defect. Summary judgment on the defect claim is not warranted.

### 2. Failure to Warn

Hexion contends that the failure-to-warn claim must be dismissed because the undisputed evidence establishes either that the danger was open and obvious and thus that there was no duty to warn, or if any duty existed, that duty was discharged by others.

#### a. Open and obvious danger

Hexion argues that the danger at issue was the danger of using an extension ladder on a floor on which the coating had not yet cured. As discussed previously, however, there is no evidence in the record that there was any open and obvious danger. In addition, Lenzen does not contend that the danger was open and obvious. Rather, the danger at issue is the danger that a person cannot discern when the floor is fully cured, which is dangerous because an uncured floor may be slippery. Hexion does not address this danger at all in its argument. The very nature of the danger alleged is that it is a hidden danger, not an open and obvious danger. Thus, this portion of the Motion is denied.

#### b. Duty discharged by others

Even if Hexion had a duty to warn, Hexion contends that the duty was discharged either by Garon's role in the transaction or by Suttle's prior use of and knowledge of Garonguard. Hexion contends that summary judgment is appropriate on the failure-to-warn claim because the undisputed facts establish that Hexion has affirmative defenses to that claim.

The Minnesota Supreme Court has recognized five separate but overlapping affirmative defenses that "could obviate or discharge the duty of a supplier to warn." Gray v. Badger Mining Corp., 676 N.W.2d 268, 275 (Minn. 2004). These defenses are (1) learned intermediary; (2) sophisticated user; (3) sophisticated intermediary; (4) bulk supplier; and (5) raw materials/component part supplier. Id. Hexion argues that all of the defenses are applicable, but the learned intermediary defense is available only in cases involving a pharmaceutical product. See id. at 276 (noting reasons for limiting learned intermediary defense to pharmaceutical products liability because of difference between prescribing physicians as intermediaries and industrial employers as intermediaries). The Court will not extend that defense to the industrial context.

The sophisticated user defense applies if the supplier "has reason to believe that the user will realize [the] dangerous condition" of the supplier's product. Id. Hexion's invocation of this defense is curious, because both Garon and Lenzen contend that the dangerous condition of the product, i.e., the fact that it would appear cured even when not fully cured and therefore still slippery, was a hidden danger of which no one was aware. At a minimum, there are questions of fact as to whether the sophisticated user defense applies.

The sophisticated intermediary defense applies in situations in which "it is highly impractical for the supplier to provide a warning directly to the end user." Id. at 277. However, this defense has been limited to situations in which the intermediary involved is the injured party's employer. See id. (noting that the reason for this defense is the "premise that the employer will act in the best interest of its employees"). Here, the "sophisticated intermediary," Garon, is not Lenzen's employer, so this defense is inapplicable.

9

The bulk supplier defense is a version of the sophisticated intermediary defense but is not limited to the employment scenario. "According to this defense, because of the difficulty in reaching the end user, the supplier of a material that is delivered in bulk can discharge its duty to warn the end user by warning the buyer of the dangerous condition of the materials." Id. at 280. As an initial matter, it is not clear that this defense can be applied as a matter of law, unless the evidence is so one-sided as to permit only one conclusion. See id. (noting "existence of fact issues concerning the adequacy of the warning" that prevented summary judgment on bulk supplier defense).

In any event, there is a question of fact here as to whether Hexion provided any warnings whatsoever. Hexion denies doing so; Garon insists that Hexion is responsible for providing Garon with the formula for Garonguard as well as the only information Garon had for the product. Hexion argues that Garon's evidence is inadmissible hearsay. But as discussed above, this hearsay evidence consists of the statements of Hexion's sales representative who sold Garon the products and allegedly gave Garon the formula and thus is likely not hearsay under the rules. There are questions of fact as to whether the bulk supplier defense shields Hexion from any duty to warn, and summary judgment on this defense is not appropriate.

Finally, the raw materials/component supplier defense applies in situations where inherently safe raw materials are used as a component in a final product. Id. at 280-81. "Even where this defense is applicable, the supplier must still provide an adequate warning to the intermediate purchaser. If the manufacturer has superior knowledge, it has a duty to relay that information to the intermediate purchaser." Id. at 281. As noted, there is a dispute as to whether Hexion provided any warnings to Garon. Moreover, there are disputes as to whether Hexion had

superior knowledge.  Hexion attempts to portray Garon as a sophisticated entity, while Garon contrasts its small family-run business with Hexion's 400-person laboratory team.  This is a classic question of fact.  It may be, as Hexion argues, that Garon's claims of lack of sophistication do not ring true, but that is a question for the jury to decide.  Summary judgment on this defense is not appropriate.

### 3. Breach of Warranties

Finally, Hexion contends that because it did not make any express or implied warranties about Garonguard, the claims for breach of warranties should be dismissed.  But one of the contentions is that the component parts of Garonguard, which were undisputedly provided by Hexion, were defective and not fit for the ordinary purposes for which those component parts are used.  If Hexion told Garon to combine the two substances for a cement sealer, then it is possible that Hexion breached its warranties, either express (in the form of what Sumner told Garon) or implied.

Lenzen also contends that the warranty at issue is Hexion's alleged statement that the combination of the two substances would cure in two to seven days.  Lenzen argues that the Garonguard on the warehouse floor was not fully cured at the time of his accident, and that the lack of full cure either caused or contributed to his accident.

Hexion's response to these arguments is the same as that discussed above: Hexion contends that the testimony regarding what Hexion told Garon is inadmissible hearsay and thus that it cannot be used to oppose summary judgment.  But as noted, it is likely that this testimony falls within an exception to the hearsay rules and is therefore admissible.  At the very least, Lenzen has established that genuine issues of material fact exist as to whether Hexion breached

any warranties, and these claims cannot be dismissed.

### III. CONCLUSION

Hexion has failed to establish that there are no genuine issues of fact as to its liability and its Motion must be denied. Suttle, however, has established that it is entitled to summary judgment.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Hexion's Motion for Summary Judgment [Doc. No. 52] is **DENIED**; and
2. Suttle's Motion for Summary Judgment [Doc No. 49] is **GRANTED**.

Dated: October 31, 2011

                                           s/Susan Richard Nelson
                                           SUSAN RICHARD NELSON
                                           United States District Judge