# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| John Lenzen, | Court File No.: 09-cv-02893 SRN-AJB |
| Plaintiff, | |
| vs. | |
| Garon Products, Inc., | **HEXION'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF DR. FUNK AND MOTION TO STRIKE DR. KNOX'S NOVEMBER 2011 AFFIDAVIT** |
| Defendant and Third-Party Plaintiff, | |
| and | |
| Suttle Apparatus Corp. and Hexion Specialty Chemicals, Inc., | |
| Third-Party Defendants. | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

I. INTRODUCTION ............................................................................................... 1

II. BACKGROUND .................................................................................................. 1

    A. Dr. Funk's expert opinion is based on numerous sources. .......................... 2

    B. Dr. Funk's expert opinion is that Plaintiff fell from a stationary ladder. ................................................................................... 3

III. STANDARD ......................................................................................................... 4

IV. ARGUMENT ........................................................................................................ 4

    A. Plaintiff's characterizations of Dr. Funk's opinion are without merit and contradict Dr. Funk's report and his deposition testimony. .................................................................................................. 5

        1. Plaintiff is simply wrong in arguing that Dr. Funk's opinion rests solely on his ladder simulation. .................................. 5

        2. Plaintiff's argument that Dr. Funk's coefficient of friction opinion is undermined by his report relies entirely on a misreading of that report. .......................................... 8

    B. A difference of opinion between Plaintiff's expert and Dr. Funk is not grounds to exclude Dr. Funk's testimony. ............................... 9

        1. Dr. Knox's belated expert opinion should be stricken. .................... 10

        2. Mere disagreement among experts is not grounds for inadmissibility. ................................................................................ 11

        3. Plaintiff's experts' opinions are inadmissible under Plaintiff's arguments. ..................................................................... 11

    C. Any remaining arguments are cross-examination topics, not reasons to exclude Dr. Funk's testimony. ................................................ 14

        1. Dr. Funk considered, and rejected, numerous other factors in reaching his opinion. ........................................................ 15

        2. Differences in background between Plaintiff's expert and Hexion's expert do not mean that Dr. Funk is unqualified to render an opinion. .................................................. 16

V. CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777 (3d Cir 1996) .......................................... 16

*Larson v. Kempker*, 414 F.3d 936 (8th Cir. 2005) .......................................................... 16

*Lauzen v. Senco Prods., Inc.*, 270 F.3d 681 (8th Cir. 2001) ............................... 4, 5, 6, 15

*N. Star Mut. Ins. Co. v. Zurich Ins. Co.*, 269 F. Supp. 2d 1140
   (D. Minn. 2003) ........................................................................................................ 10

*Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638
   (8th Cir 2009) ............................................................................................................. 7

*Rowan Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 754
   (W.D. Pa. 2004) ................................................................................................... 11, 16

*United States v. Sandoval-Mendoza*, 472 F.3d 645 (9th Cir. 2006) ............................ 4, 11

*United States v. Vargas*, 471 F.3d 255 (1st Cir. 2006) ................................................ 4, 11

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. 1999) .................................. 15

**RULES**

Fed. R. Civ. P. 16(b)(4) .................................................................................................. 10

Fed. R. Evid. 702 .............................................................................................................. 4

# I.  INTRODUCTION

Most of the arguments in Plaintiff's motion to exclude the testimony of Dr. James Funk can be readily dismissed because they are flat out wrong.  Any remaining arguments fail because they do not meet the standards for excluding expert testimony under *Daubert*.  In fact, if Plaintiff's arguments were accepted by this Court the testimony of Plaintiff's own biomechanics expert, Dr. Knox, would be inadmissible.  Finally, because the affidavit of Dr. Knox submitted by Plaintiff in support of his Daubert motion constitutes a second "rebuttal" expert opinion rendered well after the Court's established deadlines, the affidavit should be stricken.

# II.   BACKGROUND

Hexion Specialty Chemicals, Inc. ("Hexion") and Plaintiff agree on one key issue: One of the disputed fact questions in this case is Plaintiff's positioning as he fell from the ladder in the Suttle warehouse.  (*See, e.g.*, Pl's Ex. M, May 14, 2011 Report of Erick Knox ("Knox Rep."), at 7, 9 (describing 2 of 8 dummy tests conducted by Plaintiff's expert as resulting in the "essentially head-leading posture" that he "likely" achieved).)  The positioning is relevant as to whether Plaintiff fell from the ladder or whether the ladder slipped out from under Plaintiff.  (*See id.* at 8.)  Hexion retained a biomechanical engineer, Dr. James Funk, to assess the facts in this case and render an opinion as to Plaintiff's fall.  Dr. Funk's report was issued in February of 2011.  (*See* Pl's Ex. A, Feb. 27, 2011 Report of James Funk ("Funk Rep."), at 1.)

After reviewing Dr. Funk's expert report, Plaintiff retained Dr. Erick Knox, who issued his own report on May 14, 2011.  Dr. Knox's May report responded to Dr. Funk's

1

report and provided a biomechanical analysis of Plaintiff's fall. (*See, e.g.*, Pl. Ex. M, Knox Rep.) The Court had issued a scheduling Order in this case requiring disclosure of all of plaintiff's rebuttal expert disclosures by May 15, 2011. *See* Dkt. 36, Dec. 2, 2010 Order; *see also* Dkt. 51, May 11, 2011 Order (stating "it is the court's determination that disclosure of an expert report offered to rebut the opinion of Mr. Funk would be timely served if served and filed before May 15, 2011").

**A.    Dr. Funk's expert opinion is based on numerous sources.**

Dr. Funk has several degrees, including a PhD in Biomechanical Engineering. (*See* Pl. Ex. A, Funk Rep. at 1.) He is an Adjunct Assistant Professor in Biomedical Engineering at Virginia Tech and Adjunct Faculty in Graduate Medical Education for the United States Air Force School of Aerospace Medicine. (*Id.*) He has training in accident reconstruction and is an accredited accident reconstructionist. (*Id.*)

To reach his opinion in this case, Dr. Funk personally reviewed all of Plaintiff's medical records from the first 72 hours after Plaintiff fell from the ladder. (June 15, 2011 Dep. of James Funk "Funk Dep." 17:1-8, excerpts attached as Ex. 1.) He performed an independent inspection of the Suttle warehouse, including inspection of the ladder, the floor, and trusses. (Pl. Ex. A, Funk Rep. at 2.) He reviewed 134 photos of the Suttle warehouse. (Ex. 1, Funk Dep. 17:18-18:2.) He read both of Plaintiff's depositions. (*Id.* at 17:1-5.) He also reviewed certain pleadings and discovery responses in this case, reports from some of Plaintiff's experts, summaries of other deposition transcripts from this case, and summaries of Plaintiff's other medical records. (*Id.* at 17:1-20:2; Pl. Ex. A. Funk Rep. at 2-3.)

**B.     Dr. Funk's expert opinion is that Plaintiff fell from a stationary ladder.**

Dr. Funk's opinion, like Plaintiff's expert Dr. Knox's opinion, is that Plaintiff fell from the ladder onto his head. (*See* Pl. Ex. M, Knox Rep. at 7 (stating opinion that Lenzen "contacted his head on the ground first").) In Dr. Funk's expert opinion, a ladder slide-out was not consistent with Plaintiff's injuries because of the expected landing position from a slide-out fall and because Plaintiff did not have injuries to his "feet, ankles and lower extremities." (Pl. Ex. A. Funk Rep. at 5 ("If the ladder feet slid out when Mr. Lenzen was upright, there would have been almost no rotational force applied to his body to make it slip."); *see also id.* at 11.) Dr. Funk also concluded that a ladder slide-out was not consistent with the facts of this case because, based on published literature calculating the relative coefficients of friction, the fact that numerous people were able to walk for sustained periods on the floor without slipping, the coefficient of friction of Suttle's warehouse floor was high enough to support ladder use without slippage. (*See id.* at 9.)

Dr. Funk's report explains that Plaintiff's injuries are consistent with a fall from a stationary ladder. (*Id.* at 5.) He demonstrated, through use of a dummy, that a fall from a stationary ladder would result in a head-first landing position. In one test, Dr. Funk used the dummy to illustrate the phenomenon by which resistance from the ladder step supported the lower body when the fall began, resulting in a head-first fall. (*See* Ex. 1, Funk Dep. 122:12-25.) In his deposition, Dr. Funk explained that his demonstration was not designed to depict "exactly" what happened to Plaintiff, but rather that it "goes a long way to explaining what happened" because the "landing position explains all of his

3

injuries and all of his lack of injuries." (*Id.* at 17:1-20:2.) In a second dummy test, Dr. Funk simulated a ladder slide-out. In that demonstration, "the dummy remained relatively upright during the fall and landed on his feet" and in "fact, the dummy's feet and lower legs became entangled in the ladder rungs." (Pl. Ex. A. Funk Rep. at 7-8.) Dr. Funk explained that this test illustrated his conclusion that a slide-out would result in injuries different than the ones that Plaintiff experienced. (*Id.*) Notably, Plaintiff's expert Dr. Knox also used a dummy falling from a ladder in his analysis of this case. (*See* Pl. Ex. M, Knox Rep. at 9.)

### III. STANDARD

Under Federal Rule of Evidence 702, experts can be qualified to testify as to their opinion "by knowledge, skill, experience, training, or education." Mere disagreement of conclusions among experts is not grounds to exclude an expert's testimony. *See United States v. Vargas*, 471 F.3d 255, 265 (1st Cir. 2006); *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006). Experts need not rule out every potential alternative explanation of an event for their opinion to be admissible. *Lauzen v. Senco Prods., Inc.*, 270 F.3d 681, 693 (8th Cir. 2001) (reversing district court for excluding expert testimony for being "unable to rule out other accident theories" and stating that an expert's opinion which would "enable other possible theories of the event to exist such as an accident, does not preclude his testimony under this [*Daubert*] factor").

### IV. ARGUMENT

Plaintiff's arguments in support of his motion to exclude Dr. Funk's testimony are without merit. First, they rely on mischaracterizations of Dr. Funk's opinion and are

4

contradicted by the record in this case.  Second, any remaining arguments are not grounds to exclude expert testimony under *Daubert*.  The mere fact that Plaintiff's expert disagrees with Dr. Funk's opinion is not grounds to exclude his testimony.  Moreover, Plaintiff's arguments do not demonstrate fundamental methodological flaws in Dr. Funk's expert analysis but rather are, at best, cross-examination topics.

**A.     Plaintiff's characterizations of Dr. Funk's opinion are without merit and contradict Dr. Funk's report and his deposition testimony.**

Plaintiff's first two arguments, (1) that Dr. Funk's opinion that Plaintiff fell from the ladder should be excluded because it is "based entirely upon inadequate testing"; and (2) that Dr. Funk's opinion regarding the slipperiness of the floor "is contradicted by its own premises" rely on manifest mischaracterizations of Dr. Funk's expert opinion and cannot support excluding Dr. Funk's testimony.  (*See* Pl. Memo, Dkt. 99, at i, ii.)

**1.     Plaintiff is simply wrong in arguing that Dr. Funk's opinion rests solely on his ladder simulation.**

Plaintiff's first ground for excluding Dr. Funk's testimony relies entirely on his argument that the "only" basis for Dr. Funk's expert opinion is his ladder simulation.  That is simply not true.

Plaintiff argues that the "only" basis for Dr. Funk's opinion that Plaintiff's injuries were not caused by a fall from a ladder that slid out is the simulation Dr. Funk performed using a dummy.  (*See id.* at 11.)  Plaintiff also argues that Dr. Funk's opinion is based on "a single" simulation.  (*See also id.* at 20 ("Dr. Funk's opinion is based entirely upon a single ladder slide-out simulation").)  In fact, Plaintiff even goes so far as to claim that

5

Dr. Funk "concedes" that the "simulation is the basis for Dr. Funk's entire opinion" regarding a ladder slide-out. (*See id.* at 23.) Plaintiff is wrong.

Dr. Funk was abundantly clear in describing the multiple bases for his expert opinion. In his report, Dr. Funk listed all of the materials upon which his opinion was based, including his expertise as a biomechanical engineer. (Pl. Ex. A. Funk Rep. at 1-2.) Moreover, in his deposition, Plaintiff's counsel asked Dr. Funk how he rendered his opinion and Dr. Funk again explained the grounds for his opinion. Tellingly, when asked for the "basis of your opinion . . . that Mr. Lenzen fell when the ladder was fixed and the feet were not sliding," Dr. Funk's first response was Plaintiff's injuries. (Ex. 1, Funk Dep. 23:4-14.) Plaintiff's neck fracture pattern illustrates that Plaintiff's first contact with the Suttle warehouse floor was with his head; Plaintiff did not have injuries to his lower extremities. (Pl. Ex. A. Funk Rep. at 3.) Dr. Funk explained that the head-first falling position is consistent with a fall from a stationary ladder, not a ladder that slipped on the floor. (Ex. 1, Funk Dep. 24:15-25:4; 27:9-13; *see also id.* at 27:21-29:1; 31:3-33:1 (explaining that Dr. Knox's two (of eight) tests demonstrating a head-first fall were inconsistent with the facts of the case because one is inconsistent with Plaintiff's own testimony regarding his positioning and the other relied on the ladder starting to slip, then stopping, which is inconsistent with Plaintiff's testimony and the operation of friction in slips).) Dr. Funk also explained that his opinion that the ladder did not slip was based on the fact that people were able to walk on the Suttle warehouse floor for significant periods of time without slipping. (Pl. Ex. A. Funk Rep. at 8-9.)

6

In Dr. Funk's deposition, Plaintiff's counsel recognized that Dr. Funk's opinion was based on multiple grounds:

> Q: I want to make sure I'm understanding completely the basis for your opinion that Mr. Lenzen could not have fallen due to the ladder feet slipping. And what I'm understanding there two main parts of it, one is that you believe he couldn't have landed in the position that he did had the ladder been slipping; and number two, that you believe the floor would have been too slippery for people not to notice it?
>
> A: Correct.

(Ex. 1, Funk Dep. 46:5-13.)

Dr. Funk never asserted that one of his two dummy simulations was the "only" basis for his opinion that Plaintiff's ladder did not slip. Rather, he explained that Plaintiff's injury pattern and the experience of people who walked on the Suttle warehouse floor were the main grounds for his opinion that Plaintiff fell from a stationary ladder. *See id.* The side-fall simulation was simply an illustration that, if Plaintiff fell from the stationary ladder, he would have fallen head first as Dr. Funk asserted. (*Id.* at 123:8-16.) The second simulation demonstrated Dr. Funk's conclusion that a slide-out would not result in a head-first orientation and would cause injuries to the lower extremities. (Pl. Ex. A. Funk Rep. at 7-8.) *See Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 646 (8th Cir 2009) (noting that when testing is performed it "must analytically prove the expert's hypothesis").

Plaintiff's arguments that Dr. Funk's opinion is based "entirely" on a "single" ladder simulation are not supported by any record citations. (*See* Pl. Memo at 11, 20, 23.) More importantly, they are contradicted by both Dr. Funk's expert report and his

7

deposition testimony.  (*See, e.g.,* Pl. Ex. A, Funk Rep.  at 7-8; Ex. 1, Funk Dep.  46:5-13.)  Thus, Plaintiff's arguments that Dr. Funk's testimony should be excluded fail.

> **2.      Plaintiff's argument that Dr. Funk's coefficient of friction opinion is undermined by his report relies entirely on a misreading of that report.**

Plaintiff's second main argument to exclude of Dr. Funk's testimony fares no better.  Plaintiff argues that Dr. Funk's opinion regarding the coefficient of friction ("COF") of the Suttle warehouse floor is "contradicted by its own premises."  (Pl. Memo at 31.)  Plaintiff's argument is based on a misreading of Dr. Funk's report.

One of the reasons that Dr. Funk does not believe that Lenzen's ladder slipped on the floor is that numerous people, including Plaintiff, were able to walk throughout the warehouse without slipping on the floor.  (Pl. Ex. A, Funk Rep.  at 8-9.)  Dr. Funk calculated that the COF that would cause a ladder to slip is 0.19, which, based on published scientific literature, would also cause people walking across the floor to slip:

> The amount of friction required to prevent the ladder from sliding out was calculated using standard physics equations.  For someone working with their shoulder level at the top of the ladder that is placed 18.5 feet above the ground at an angle of 75 degrees, the required coefficient of friction to keep the ladder feet from sliding on the floor was calculated to be 0.19. . . .
> A required friction coefficient of 0.19 is extremely low.  In fact, it is less than friction coefficient required for normal walking, which means that if the floor had been so slippery that the ladder feet slid out, then it would have been impossible to walk normally on it without slipping.  *A typical step* on a level surface requires a coefficient of friction in the range of 0.15 – 0.3 (Gronqvist et al., 2001; Redfern et al. 2001).  Considering that the required friction coefficient varies with each step, and with different individuals, walking speeds, and types of footwear, *the required friction coefficient to avoid slips during normal use of a floor is probably above*

8

> *0.35* (Chang et al., 2008), *with some suggesting a friction coefficient up to 0.45 is required* (Batterman and Batterman, 2005.) Running also requires a coefficient of friction of at least 0.45 (Gronqvist et al., 2001).

(Pl. Ex. A, Funk Rep. at 9 (emphases added).)

Plaintiff's argument takes the calculation of a COF for a single step and misapplies it to multiple people taking multiple steps: Plaintiff argues that Dr. Funk's testimony is inadmissible because, "Dr. Funk's own report says the RCOF for walking can be as low as 0.15. Thus, it is indisputable that the RCOF for walking could be as low as 0.15, which is lower than the 0.19 number he cites for the RCOF of safe ladder use." (Pl. Memo at 32.) But the 0.15 number is the lowest possible COF for a singular "step." Dr. Funk's rationale is based on the multiple people who walked multiple steps on the Suttle warehouse floor without slipping. (*See* Ex. 1, Funk Dep. 130:16-131:15.) Plaintiff's argument ignores Dr. Funk's citations to published literature concluding that the COF for multiple people taking multiple steps is well above 0.19, the COF required to support ladder use. (Pl. Ex. A, Funk Rep. at 9.)

Plaintiff's argument that Dr. Funk's COF analysis is "contradicted by its own premises" relies on a misreading of his report that does not render his opinion inadmissible.

**B.  A difference of opinion between Plaintiff's expert and Dr. Funk is not grounds to exclude Dr. Funk's testimony.**

The bulk of Plaintiff's remaining arguments are not adequate reasons to exclude Dr. Funk's testimony. Dr. Knox's affidavit is an untimely expert disclosure and should be stricken. Regardless, the mere fact that Plaintiff's expert, Dr. Knox, disagrees with

9

Dr. Funk's opinion is not grounds to hold that Dr. Funk's opinion is inadmissible. Moreover, if Plaintiff's arguments for excluding Dr. Funk's testimony were accepted, Plaintiff's expert testimony would also be inadmissible.

### 1. Dr. Knox's belated expert opinion should be stricken.

Plaintiff uses an affidavit submitted by his expert, Dr. Knox, and dated November 30, 2011, as support for his motion to exclude Dr. Funk's testimony. Dr. Knox's affidavit constitutes a second "rebuttal" expert opinion disclosed more than six months after the deadline for conclusion of rebuttal expert discovery set by this Court. *See* Dkt. 36, Dec. 2, 2010 Order. Plaintiff's tardiness is particularly unjustified given this Court's previous ruling on the applicable deadlines for Dr. Knox's rebuttal opinion pursuant to Plaintiff's motion. *See* Dkt. 51, May 11, 2011 Order (stating "it is the court's determination that disclosure of an expert report offered to rebut the opinion of Mr. Funk would be timely served if served and filed before May 15, 2011"). This court should strike Dr. Knox's tardy affidavit and not consider it in deciding Plaintiff's motion. *See* Fed. R. Civ. P. 16(b)(4) (stating that a scheduling order may be modified only for "good cause" and with the judge's consent); *see also N. Star Mut. Ins. Co. v. Zurich Ins. Co.*, 269 F. Supp. 2d 1140, 1145 (D. Minn. 2003) (stating that, based on the fact that the expert opinion disclosed four months after the deadline, the court was "unable to conclude that North Star's failure to disclose its expert report was due to any other cause than its carelessness, inadvertence, or inattention").

### 2. Mere disagreement among experts is not grounds for inadmissibility.

Even if Dr. Knox's additional "rebuttal" opinion is considered, however, it does not provide a basis to exclude Dr. Funk's testimony. Disagreement among qualified experts presents a factual question for the jury to resolve, not a bar to admissibility of one expert opinion. *See United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) ("Daubert makes the district court a gatekeeper, not a fact finder. When credible, qualified experts disagree, a criminal defendant is entitled to have the jury, not the judge, decide whether the government has proved its case."); *see also Rowan Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 754, 758 (W.D. Pa. 2004) ("the fact that defendants and their expert may disagree with [plaintiff's expert] as to whether the asserted flaws actually were in fact flaws and whether such flaws contributed to the guideline fracture is a matter of weight not admissibility"). Were it otherwise, nearly every case with expert testimony would be resolved through *Daubert* challenges. As the First Circuit has explained, "'Daubert does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct.' Once the district court finds that the expert's methodology is reliable, the expert is allowed to testify as to the inferences and conclusions he draws from it." *See United States v. Vargas*, 471 F.3d 255, 265 (1st Cir. 2006).

### 3. Plaintiff's experts' opinions are inadmissible under Plaintiff's arguments.

Many of Plaintiff's critiques of Dr. Funk's opinion, if accepted, would also render Plaintiff's expert's opinions inadmissible.

11

### a. Plaintiff's arguments apply to his own biomechanical expert.

Plaintiff's biomechanical expert conducted an analysis and testing that is strikingly similar to Dr. Funk's testimony. If Plaintiff is correct that Dr. Funk's testimony is inadmissible, Dr. Knox's proffered testimony is inadmissible as well. For example, any critiques of Dr. Funk's use of dummy simulations is equally applicable to Dr. Knox, who employed them in his analysis. (*See* Pl. Ex. M, Knox Rep. at 9.) Use of a dummy is not reason to exclude Plaintiff's or Hexion's biomechanical testimony since it is standard methodology and employing an actual human to test an 18 foot ladder fall is out of the question. (*See generally id.*) Similarly, Plaintiff argues that Dr. Funk's testimony should be excluded because his testing with a dummy does not account for the "nearly infinite variety of ways a slide-out could occur." (Pl. Memo at 24.) Yet Dr. Knox did not conduct an "infinite" number of dummy tests; he conducted eight. (*See* Pl. Ex. M, Knox Rep. at 9.) Plaintiff cannot demonstrate that use of a dummy to simulate an 18 foot fall is improper biomechanical methodology and thus, Dr. Funk's testimony about that testing is admissible.

### b. Dr. Foscante's opinion should be excluded under Plaintiff's analysis.

Some of Plaintiff's arguments demonstrate the inadmissibility of proffered testimony of Dr. Foscante, one of Plaintiff's proposed witnesses and whose testimony is subject to a pending *Daubert* motion that Hexion filed more than a month ago. Plaintiff argues that Dr. Funk's testimony—which uses the same dummy simulation methodology as Plaintiff's biomechanical expert, Dr. Knox—is inadmissible because of limitations in

Dr. Funk's testing. (*See* Pl. Memo at 23.) Plaintiff's acknowledgement that testing must be connected to the facts in the case demonstrates the inadmissibility of Dr. Foscante's testimony. (*See* Pl. Memo at 30 (acknowledging that expert's theory may not be "connected to existing data only by . . . *ipse dixit*," and cannot contain "analytical gaps").) Dr. Foscante tested Garonguard on glass plates rather than concrete and did not demonstrate a slippery coefficient of friction under any testing conditions applicable to Plaintiff's fall. Thus, Dr. Fosconte's testimony should be excluded because his testing is not germane to the issues of this case and because his results contradict his theories. (*See generally* Mot. to Exclude Dr. Foscante's Testimony, Dkt. 86.)

     For the same reason, another of Plaintiff's arguments demonstrates the inadmissibility of Dr. Foscante's, not Dr. Funk's, opinion in this case. Plaintiff cites to an Order excluding Dr. Funk's testimony in the *Fayard* case, which involved an accident involving a pickup truck. (*See* Pl. Memo at 21-22.) As demonstrated in the Order granting in part the defendant's motion for reconsideration of that decision, courts must carefully scrutinize an expert's testing conditions. (Dec. 29, 2010 Ruling on Motion in Limine in *Fayard v. Tire Kingdom, Inc.*, No. 09-171, Dkt. 71, (M.D. La.) "*Fayard* Ruling" attached as Ex. 2.) In *Fayard*, the Court reversed its earlier ruling that Dr. Funk's opinion was entirely inadmissible, (*Id.* at 3-4.) It did, however, continue to exclude part of Dr. Funk's testimony because his testing involved a different type of pickup truck than the truck at issue in the case. (*Id.* at 1-2.) That analysis is directly applicable to Dr. Foscante's testing of Garonguard on glass plates but not on concrete (the substance in the Suttle warehouse where Plaintiff fell). (*See id.*) In sum, the

13

exclusion of part of Dr. Funk's testimony in a case involving pickup trucks does not assist this court in determining the admissibility of testimony regarding the dummy simulations performed by Dr. Funk and Dr. Knox, but it serves as a further illustration of the inadmissibility of Dr. Foscante's testimony.

      **c.**    **Inspection and discussion of the scuff marks is a topic of Plaintiff's experts' testimony.**

Finally, Plaintiff seeks to exclude Dr. Funk's evaluation of the scrape marks on the warehouse floor and the trusses. But Plaintiff's own experts discuss the marks in great detail and cite them as a basis for their opinions. (*See, e.g.*, Pl. Memo at 6.) If Plaintiff's experts can testify as to the significance of the scrape marks to their opinion, Dr. Funk should be allowed to describe his consideration of the marks. (*See* Pl. Ex. M, Knox Rep. at 6 (discussing scuff marks found in Suttle warehouse).)

In short, Plaintiff's arguments do not warrant the exclusion of Dr. Funk's opinion but they do reinforce the inadmissibility of Dr. Foscante's opinion.

**C.**    **Any remaining arguments are cross-examination topics, not reasons to exclude Dr. Funk's testimony.**

Plaintiff's arguments are not valid *Daubert* challenges. Other than the mischaracterizations of Dr. Funk's opinion and the fact that it differs from Plaintiff's expert's opinion which are addressed above, any other basis for Plaintiff's motion to exclude Dr. Funk's testimony are potential cross-examination topics, not reasons to find Dr. Funk's opinion inadmissible.

### 1.    Dr. Funk considered, and rejected, numerous other factors in reaching his opinion.

Plaintiff appears to argue that Dr. Funk's opinion is inadmissible because he failed to consider certain factors in rendering his opinion. The record demonstrates that Plaintiff's characterizations are untrue. The mere fact that Plaintiff disagrees with Dr. Funk's conclusions as to those factors is applicable to challenge through cross-examination but are not grounds to find his opinion inadmissible.

Contrary to Plaintiff's assertions, Dr. Funk accounted for Plaintiff's testimony that he "pushed" off the ladder when he fell. (*Compare* Pl. Memo at 23 *with* Ex. 1, Funk Dep. 41:10-44:19; 71:16-72:10.) And Dr. Funk explained why any cross-bracing in the trusses did not prove that his theory that Plaintiff fell from the ladder was incorrect. (*Compare* Pl. Memo at 29 *with* Ex. 1, Funk Dep. 118:9-19; 120:21-25; *see also* Pl. Ex. M, Knox Rep. at 4 (noting that Plaintiff testified that the conduit at brackets were "at about shoulder height").) Plaintiff may argue that Dr. Funk's rationale is incorrect in closing argument, but he cannot support a motion to exclude Dr. Funk's opinion for failure to consider these variables. *See Lauzen v. Senco Prods., Inc.*, 270 F.3d 681, 694 (8th Cir. 2001) (noting that consideration of possible alternatives is sufficient to survive *Daubert* challenge and citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 266 (4th Cir. 1999)).

### 2. Differences in background between Plaintiff's expert and Hexion's expert do not mean that Dr. Funk is unqualified to render an opinion.

Plaintiff suggests that Dr. Funk's opinion is inadmissible because he has not testified in a case involving a fall from a ladder prior to this one. That is not grounds to hold that Dr. Funk is unqualified to render an expert opinion.

Dr. Funk, a biomechanical engineer with a PhD, academic positions, and an accredited accident reconstructionist is more than qualified to render a biomechanical opinion as to Plaintiff's fall. *See Larson v. Kempker*, 414 F.3d 936, 941 (8th Cir. 2005). The fact that Plaintiff's expert has testified in other cases involving ladders does not render Dr. Funk's testimony inadmissible. *See Rowan Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 754 (W.D. Pa. 2004) (stating that "[a]lthough defendants' [sic] challenge Crooks qualifications because he has no training or experience with coronary guidewires specifically, this too goes to the weight, not admissibility, of Crooks' testimony" and citing *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir 1996) for proposition that "who is best qualified is a matter of weight upon which reasonable jurors may disagree").

This case is about whether Plaintiff fell from the ladder and whether the Suttle warehouse floor was slippery. Those topics involve Plaintiff's injuries and the biomechanics of walking – both of which are proper topics for biomechanical testimony. Especially in this case, where there are no allegations or evidence of ladder failure, Dr. Foscante is more than qualified to provide expert testimony. (*See* Pl. Ex. M, Dr. Foscante Curriculum Vitae, at 4-14 (citing numerous publications and presentations of

biomechanic research by Dr. Funk involving spine and head injuries, including "Spine Injury Biomechanics").)

## V. CONCLUSION

Plaintiff's motion to exclude Dr. Funk's testimony should be denied. In addition, the tardy affidavit of Dr. Knox discussing Dr. Funk's expert opinion should be stricken.

Dated:  December 22, 2011                     FAEGRE & BENSON LLP

                                                                                s/ Joseph M. Price
Joseph M. Price (#88201)
Jennifer Y. Dukart (#388616)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 766-7020 Phone
(612) 766-1600 Fax
jprice@faegre.com
jdukart@faegre.com

OF COUNSEL:

Timothy J. Leer (#136700)
Michael M. Skram (#340145)
Brian M. McSherry (#388087)
JOHNSON & CONDON, P.A.
7401 Metro Boulevard, Suite 600
Minneapolis, MN 55439-3034
(952) 831-6544 Phone

*Attorneys for Third-Party Defendant Momentive Specialty Chemicals Inc. f/k/a Hexion Specialty Chemicals, Inc.*

fb.us.7774168.11